ROSELLA WALSH McDERMOTT *vs.* CATHERINE R. SCULLY, EXECUTRIX, ET ALS. (CATHERINE R. SCULLY, EXECUTRIX, ET ALS. APPEAL FROM PROBATE).

Third Judicial District, New Haven, June Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The declarations of a testator, made to the scrivener of his will at the time it was drawn, as to his testamentary intention or the meaning of the expressions used in the writing, are inadmissible in evidence ·to control or vary its language, except in cases of equivocation or latent ambiguity, or to rebut a resulting trust; for a testator's intent is to be ascertained from the words of his will, interpreted in the light of their context and of the relevant and material circumstances surrounding the testator when he executed the instrument.

A latent ambiguity or equivocation arises only when the language of the will applies equally well to two or more persons or to two or more things, and then the declarations of the testator are admissible for the purpose of showing which person or thing was intended by him.

When the intent of the testator, as disclosed by his will, is doubtful, his attitude or feeling toward the legatee in question is a relevant and material fact; but the inquiry should be confined to that point and not call for declarations of the testator as to why he made this particular provision in his will.

A will contained this paragraph: "I give to [naming the legatee] five dollars, having heretofore deeded to her my house at No. 554 Dixwell Avenue in New Haven, and a mortgage in Bethany of twenty-five hundred dollars." *Held:*—

1. That evidence that the testator had conveyed the Dixwell Avenue property to the legatee, and had not given her any Bethany mortgage, was properly admitted, since the court in passing upon the scope of the bequest was entitled to be placed in the position of the testator with respect to his property at the time he executed his will.

2. That while it was possible, by adhering to the rules of punctuation, to construe the word "mortgage" in the last clause of the paragraph in question as the object of the verb "give," and thus entitle the legatee to the five dollars and to the Bethany mortgage also, such an interpretation did violence to the plain intent of the testator to make a nominal gift only to this legatee, did away with the necessity for any explanation or justification for the five dollar gift and rendered the explanatory clause useless and inappropriate, and

McDermott *v.* Scully.

made that small gift itself a most unusual and peculiar act; and that for these reasons, and for others in harmony with the general purpose of the will, the paragraph in question must be construed to give to the legatee only the five dollar pecuniary legacy.

Punctuation has its uses in construction, but it is seldom of controlling interest and can never prevail against the meaning of the will or the intention of a testator.

An inaccuracy or mistake in the description of the subject-matter of a legacy is not important, if the particular article or matter is in other respects sufficiently identified.

Argued June 14th—decided July 27th, 1916.

APPEAL by the defendants from an order and decree of the Court of Probate for the district of New Haven requiring the executors of the will of Maurice Welch of New Haven, deceased, to amend their administration account by allowing the claim of the plaintiff, a legatee under the will, taken to and tried by the Superior Court in New Haven County, *Reed, J.;* facts found and judgment rendered for the plaintiff, affirming the action of the Court of Probate, and appeal by the defendants. *Error and cause remanded with direction to enter judgment for the defendants.*

*Jacob P. Goodhart* and *Matthew A. Reynolds,* for the appellants (defendants).

*Harrison Hewitt* and *Charles E. Clark,* with whom was *Charles E. Julin,* for the appellee (plaintiff).

WHEELER, J.   Maurice Welch, or Walsh, deceased, leaving a will, the eighth clause of which reads as follows: "I give to Rosella McDermott five (5) dollars, having heretofore deeded to her my house at No. 554 Dixwell Avenue in New Haven, and a mortgage in Bethany of twenty-five hundred (2500) dollars."

The executors named in the will filed their account showing, as a portion of the residuary estate remaining

for distribution, a note of Wallace S. Saxton for $2,200, dated October 1st, 1909, secured by a mortgage on land in Bethany. The Court of Probate, after due hearing, directed the executors to turn over to Rosella Walsh McDermott (called Rosella McDermott in the will) the Saxton mortgage, and accepted the account as thus corrected. The executors appealed from this decree, and the court found, in addition to the facts above, that Rosella Walsh McDermott was not an heir at law of Maurice Welch; that the latter on April 26th, 1906, conveyed by quitclaim deed to Rosella Walsh McDermott the premises known as No. 554 Dixwell Avenue, New Haven, but that he never deeded to Rosella Walsh McDermott any mortgage in Bethany; that she once held a mortgage on property in Bethany for $2,900, in which Wallace S. Saxton was the mortgagor, and that this mortgage was paid in full to Rosella Walsh McDermott about 1909. It did not appear who paid this.

The Superior Court affirmed the decree of the Court of Probate, holding that under the eighth clause Rosella Walsh McDermott took $5 and the Saxton mortgage in Bethany for $2,200. The executors appeal for errors in rulings on evidence and in the construction of the eighth clause.

The appellants called the scrivener of the will and asked him several questions, viz, as to what Mr. Welch stated to him with reference to Rosella Walsh McDermott; as to a mortgage in Bethany so far as it related to Mrs. McDermott; as to whether he said Mrs. McDermott should have any other sum than the $5 mentioned in the will; and as to his feelings toward Mrs. McDermott, and as to why he made the provision of the will as set out in paragraph eight thereof. These questions were claimed to enable the court to look in upon the testator's mind and to adjudge in what sense

the language of the will was actually used; to show that the testator did not intend to give Mrs. McDermott the $2,500 or any mortgage, but that the mortgage referred to in this clause of the will related to a matter long before disposed of, to a mortgage paid for her of substantially $2,500 in Bethany, and to which the $2,500 mortgage of this clause referred. To all of this evidence the appellee objected, as (a) an attempt to offer direct evidence of the intention of the testator by testator's own declarations in the absence of equivocation, and (b) on the ground that as the meaning of the will was plain, no extrinsic evidence was admissible for the purpose of aiding its construction.

The testator's declarations of his testamentary intention, or as to the meaning of the words which the scrivener used, are not admissible except in cases of equivocation or, as otherwise called, latent ambiguity, and then only as explanatory of or connected with the language used. "Where, in a will, the description of the person or thing intended is applicable with equal certainty to each of several subjects, . . . extrinsic evidence, including proof of the testator's declarations as to his intentions made at the time of drawing the will, is admissible for the purpose of establishing which of such persons or things was intended by him." *Dunham* v. *Averill*, 45 Conn. 61, 68; *Fairfield* v. *Lawson*, 50 Conn. 501, 510. Oral evidence so admitted does not add to the terms of the will but explains them, showing to which of different persons or things the testator referred. And if there be no latent ambiguity or equivocation taken in connection with all the surrounding facts, so as to make doubtful the identity of the legatee or the subject-matter of the legacy or bequest, extrinsic evidence of the intention of the testator is not admissible.

This rule of exclusion follows from the general rule

that the testator's intent is to be ascertained from the will itself construed in the light of its context. It also follows from the statute requirement that all wills must be in writing and executed according to a certain statutory form. Nor does our "statute permitting proof of the declarations of deceased persons . . . include declarations by testators as to the meaning attached by them to the provisions in their wills." *Chapman* v. *Allen,* 56 Conn. 152, 167, 14 Atl. 780. It cannot be shown that the testator directed the scrivener to write the will in a form or with a meaning different from that which appears in the will, unless there is a latent ambiguity or equivocation as to the person or subject meant to be described, or unless the evidence is offered to rebut a resulting trust. *Avery* v. *Chappel,* 6 Conn. 270, 275. The rule and the exception, and the reasons underlying them, have been long since stated by our court. Their application still affords matter for controversy.

The immediate question is, did the testator, Welch, give by his will to Mrs. McDermott the Bethany mortgage which is a part of his estate? The evidence of the instructions given the scrivener was not admissible unless there was an equivocation. If there was another Bethany mortgage owned by the testator, or if there had been one owned by the testator, and the description in the will might exactly fit the mortgage outside the will, a case of equivocation or latent ambiguity would arise and the declarations of the testator made to the scrivener, if relevant and material, would be admissible. But in this case the testator never owned another mortgage in Bethany.

The executors now claim that the testator referred, in the eighth clause, to a mortgage made by Saxton to Mrs. McDermott and which the testator paid. The record does not show that any such claim was made

upon the trial. Even so, it would not have presented a case of equivocation, but an instance where the testator, through the mistake of the scrivener or himself, described one thing in his will when he meant to describe not a similar thing but a totally dissimilar thing. Such an attempt does not fall within the exception to the rule, and the offer was clearly inadmissible.

Had the question been asked directly, as to what were the relations between the testator and Mrs. Mc-Dermott at the time of execution of the will, it would have been admissible. Such an offer would have tended to prove a condition, a fact always admissible when relevant and material and the intent of the testator is in doubt. The question asked was for Mr. Welch's statement "as to his feelings toward Mrs. McDermott, and as to why he made the provision of the will as set out in paragraph eight thereof?" The latter part of the question came within the rule we have before discussed, and was clearly inadmissible. The only occasion when the relations between Mr. Welch and Mrs. McDermott were made the subject of direct question was on the cross-examination of Mrs. McDermott, and the trial judge was right in excluding the question because not then proper cross-examination.

The evidence that the testator had deeded land on Dixwell Avenue, as recited in the will, and that Mr. Welch had never deeded a mortgage in Bethany to Mrs. McDermott, were part of the circumstances surrounding the will, and admissible to help determine the quantity of interest the testator had given by his will. The court should place itself in the situation of the testator, surrounding itself by the facts which were before him, and then ascertain the meaning of the language it is called upon to construe. *Thompson* v. *Betts*, 74 Conn. 576, 579, 51 Atl. 564.

The clause of the will under consideration divides it-

self into three parts: (1) I give to Rosella McDermott five (5) dollars; (2) having heretofore deeded to her my house at No. 554 Dixwell Avenue in New Haven, and (3) a mortgage in Bethany of twenty-five hundred dollars.

Under the ordinary rules of punctuation, the comma after New Haven, if regarded, makes the word "mortgage" as well as the word "dollars" the object of the verb give, and so read the paragraph would give Mrs. McDermott the mortgage legacy as well as the money legacy of $5. And the only mortgage possessed by the testator was the Saxton mortgage of $2,200 as inventoried. If this construction prevails, effect would be given to each of the three parts of this paragraph. And this result accords with Jarman's XVI Rule. 2 Jarman on Wills (6th Amer. Ed.) 772.

If, on the other hand, the comma is not recognized, the word "mortgage" becomes the object of deeded. And as the testator never deeded Mrs. McDermott a mortgage, the third clause of paragraph eight would refer as a fact to a matter which never had an existence.

The description of the mortgage, if it refers to the mortgage owned by the testator, is incorrect in stating the amount as $2,500 instead of $2,200; but under the rules of testamentary construction this is unimportant if the rest of the description applies to the mortgage in Bethany owned by the testator.

The purpose of rules for testamentary construction is to ascertain the intention of the testator. It requires a very careful reading of the eighth clause to reach the construction claimed by the appellee. The average reader would not note the comma, upon which alone that construction rests, nor would he read the paragraph as the appellee contends it should be read. Punctuation has its uses in construction, but it is seldom of controlling significance, and it can never prevail against

the sense or the intention of a testator. *Zimmerman* v. *Mechanics Savings Bank*, 75 Conn. 645, 54 Atl. 1120; *In re Turner*, 208 N. Y. 261, 101 N. E. 905; *Matter of Kuehle* v. *Zimmer*, 249 Ill. 544, 94 N. E. 957; 1 Jarman on Wills (6th Amer. Ed.) 33. Punctuation marks, especially the comma, Schouler observes, are used in even formal documents without much precision. 1 Schouler on Wills (5th Ed.) § 571. Punctuation is never permitted to cloud an otherwise clear statement. This will was typewritten, and. we do not know that the testator read it over, and when read to him we have no means of knowing whether the scrivener so read it as to make the comma effective, or whether the testator understood the meaning of the paragraph if the necessary emphasis was laid on the comma. The case is certainly one where gravest doubt must be entertained of adopting a construction which relies, and must rely almost entirely, upon the use and emphasis of the comma in a sentence.

The gift of $5 in an estate of the proportions of this, signifies that it is a nominal gift. Such a gift in a will carries a plain indication of a desire to make a nominal remembrance, or what is more likely, an intention to make clear that the testator had the legatee in mind and intended to give a nominal sum; in the case of an heir it is a method of practically disinheriting and at the same time indicating that the testator had the legatee in mind. The gift of the mortgage of $2,500 is a substantial one.

The second clause, "having heretofore deeded to her my house at No. 554 Dixwell Avenue in New Haven," is obviously the reason why he had made the legacy of $5. It would be an entirely adequate explanation and justification for a nominal gift. But if, in addition, the testator is giving a $2,500 mortgage, that requires no explanation or justification, and the clause of explana-

tion has no place in the paragraph. That clause states a reason for giving her a nominal sum, not a reason for giving her a substantial sum,—almost one fifth of the testator's estate. Under the appellants' construction the second clause has a reasonable basis for existence. Under the appellee's construction it is wholly unexplainable. Furthermore, it is quite unusual that the testator, or the scrivener for the testator, should have added to the gift of $2,500 a cash legacy of the nominal value of $5.

Upon the theory of construction adopted by the trial court, the second clause of this paragraph should come either at the end or the beginning of the paragraph. It has no place in the middle, for there it can refer to only the cash legacy of the first clause.

The will itself, upon the appellants' theory, is consistent: it provides, aside from certain charitable bequests, for the next of kin alone, with the exception of the $5 legacy to Mrs. McDermott, who was not of the next of kin.

We have endeavored to give every consideration to the presence of the comma, and to the fact that under the appellants' construction, so far as we know, the third clause of this paragraph refers to no known mortgage, while under the appellee's construction it may be held to refer to the Bethany mortgage described in the inventory; and yet we think it the more likely construction that the testator did not intend to give Mrs. McDermott a greater bequest than the $5.

There is error, the judgment is reversed and the cause remanded with direction to the Superior Court to enter its judgment in accordance with this opinion.

In this opinion the other judges concurred.